**ORIGINAL**

# In the United States Court of Federal Claims

No. 14-544C
Filed: March 12, 2015

**FILED**

MAR 1 2 2015

U.S. COURT OF
FEDERAL CLAIMS

```
* * * * * * * * * * * * *
EDWARD JOSEPH CYCENAS,          *
                                *
          Plaintiff,            *
                                *
     v.                         *
                                *
UNITED STATES,                  *
                                *
          Defendant.            *
                                *
* * * * * * * * * * * * *
```

**Pro Se** Plaintiff; Lack of Subject
Matter Jurisdiction; Failure to State a
Claim; Breach of Contract.

**Edward Joseph Cycenas**, Siren, WI, pro se.

**Kenneth D. Woodrow,** Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for the defendant. With him were **Benjamin C. Mizer**, Acting Assistant Attorney General, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, Civil Division, and **Peter B. Jurgeleit**, Office of General Counsel, United States Department of Agriculture, Milwaukee, WI, of counsel.

**O R D E R**

**HORN, J.**

**FINDINGS OF FACT**

Pro se plaintiff Edward Joseph Cycenas filed suit in this court against "Defendant, United States of America acting through the United States Department of Agriculture Rural Housing Service," (Rural Housing Service).[1] Plaintiff alleges Gordon Fick, "Chief Principal and Officer of St. Croix Valley Hardwoods, Inc.," (St. Criox) and St. Croix are "co-conspirator[s]" with the Rural Housing Service. Plaintiff asserts various claims in his complaint, including breach of contract, fraudulent misrepresentation to the United States Bankruptcy Court, mortgage fraud, credit theft or fraud, identity theft, theft of his social security number, and unauthorized use of his social security number,

---

[1] In his submissions to the court, plaintiff appears to use a number of titles to refer to the United States Department of Agriculture Rural Housing Service, including "USDA-RD," "RD," and "USDA-RH."

mortgage accounts and credit. All of plaintiff's claims appear to relate to a property that is subject to a mortgage note executed by plaintiff with the Rural Housing Service. Mr. Cycenas alleges that

> on or before February 1984, this Plaintiff created and executed, acknowledge, granted, and delivered to the Defendant RD, a mortgage note secured by the following described parcel of land; Lots Three(3) and Four(4), Certified Survey Map, Volume Three(3), at Page 240, as recorded in the office of the Recorder of Deeds for Burnett, Wisconsin. Said CSM [Certified Survey Map] being located in the Northeast Quarter of the Northwest Quarter (NE1/4  NW1/4), of Section Seventeen (17), Township Thirty-eight (38) North, of Range Sixteen (16) West, in the county of Burnett, Wisconsin.

Plaintiff requests that "if this court finds that this may be the wrong venue, . . . the court transfer this complaint to the proper court."

Defendant filed a motion to dismiss the complaint for lack of jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC) (2014). According to defendant's motion to dismiss, "[i]n 1983, Mr. Cycenas applied to RHS (then known as the Farmers Home Administration) for a residential home loan (the Property)." Further, according to defendant, "[o]n November 8, 1983, Mr. Cycenas executed a $44,000 promissory note in favor of RHS, used the proceeds to buy the Property and construct a home, and granted RHS a first mortgage lien on the Property."

Plaintiff alleges in his complaint that, "[o]n or before September 7, 2006, Defendant SCVH, acting through Defendant Fick, took by hostile action the same parcel of property, and moved the title of said property into the name of St. Croix Valley Hardwoods, Inc., (SCVH)." According to defendant's motion to dismiss, St. Croix had filed a complaint on September 12, 2005 in the Burnett County Circuit Court in Wisconsin against Mr. Cycenas, and Siren Custom Woodworking, Inc, for which defendant contends Mr. Cycenas is an officer and principal stockholder, and a Mr. Spencer Cobb[2] seeking a money judgment of $30,301.67. On November 17, 2005, the Burnett County Wisconsin Circuit Court entered a judgment against the plaintiff for that amount. See St. Croix Valley Hardwoods, Inc. v. Siren Custom Woodworking, Inc. et al., No. 05-CV-227 (Burnett Cnty., Wis.). Plaintiff attaches to his complaint a copy of an August 24, 2006 "Execution Against Property" from the Burnett County Circuit Court ordering the Sheriff to satisfy St. Croix's judgment of $30,301.67 "out of the personal property of the judgment debtor within your county" and "if sufficient personal property cannot be found, satisfy the judgment out of the real property in your county belonging to the judgment debtor." Plaintiff also attaches to his complaint a copy of an "Execution Against Property" that was issued by the Burnett County Sheriff's Department in Siren,

---

[2] Mr. Cobb's title and relation, if any, to the above captioned case is unclear from the record before the court.

Wisconsin, which as indicated by a stamp on the document, appears to have been recorded with the Burnett County Register of Deeds on September 7, 2006, as:

> Lots 3 and 4 of Certified Survey Map No. 740, recorded in Volume 3, on Page 240, as Document No. 191926, in the office of the Register of Deeds for Burnett County, Wisconsin, being located in the NE ¼ NW ¼, Section 17, Township 38 North, of Range 16 West, Burnett County, Wisconsin.

On October 24, 2006, plaintiff appears to have petitioned for Chapter 7 bankruptcy protection. See In re Edward J. Cycenas, No. 06-12697 (Bankr. W.D. Wis.). Plaintiff contends that "[o]n or before, February 15, 2007, this Plaintiff filed for Chapter 7 Complete Discharge Bankruptcy." Plaintiff attaches to his complaint, a copy of a Form B18 from the United States Bankruptcy Court of the Western District of Wisconsin to plaintiff, dated February 15, 2007, ordering that "[t]he debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code)." See In re Edward J. Cycenas, No. 06-12697.

The docket and filings in the Bankruptcy Court reflect that, on February 14, 2007, St. Croix had moved for relief from the automatic stay, pursuant to 11 U.S.C. § 362(d), in order to foreclose on its judgment lien on the plaintiff's property. See In re Edward J. Cycenas, No. 06-12697. Plaintiff attaches to his complaint the Bankruptcy Court Order dated March 23, 2007, mandating that:

> the automatic stay be terminated as to St. Croix Valley Hardwoods, Inc., with respect to property of the debtors described as follows: **Lots 3 and 4 of Certified Survey Map No. 740, recorded in Volume 3, on Page 240, as Document No. 191926, in the office of the Register of Deeds for Burnett County, Wisconsin, being located in the NE ¼ NW ¼, Section 17, Township 38 North, of Range 16 West, Burnett County, Wisconsin.**

(emphasis in original). The March 23, 2007 Order explained that:

> The Notice of Motion and Motion for Relief from Automatic Stay was served upon all interested parties, and no objections or other responses thereto was served or filed within fifteen (15) days after the service of such notice and motion (plus three days mailing) or filed within a reasonable time thereafter.

The March 23, 2007 Order stated that: "The Court being fully advised in the premises, and upon all the files and records herein, finds that cause exists entitling the Movant to relief from the automatic stay."

Plaintiff also cites to and attaches to his complaint an affidavit from Zandra Kirby, who, from her affidavit, appears to have stayed on the property as a tenant and to have paid rent to plaintiff starting in 2000. Ms. Kirby indicates in her affidavit that "my late

husband Allen and I rented from Edward Joseph Cycenas, a house located at 7632 Anderson Street, in the Village of Siren, WI, from sometime in the spring of 2000." She also indicated that "[w]hen the same house we were renting was foreclosed on by St. Croix Valley Hardwoods sometime on or before 2006, my husband and I began renting from St. Croix Valley Hardwoods." Ms. Kirby also indicates, "I continued renting this same house after my husband Allen died from St. Croix Valley Hardwoods through September 2012." Defendant asserts in its motion to dismiss that, "[i]n May 2007, RHS visited the Property 'for foreclosure action' and discovered that someone other than Plaintiff was living there."

Plaintiff also cites to and attaches to his complaint a copy of a letter dated July 9, 2013 from Thomas E. Hannah, the Rural Housing Service Deputy Administrator of Centralized Servicing Center, to Congressman Sean P. Duffy in response to an inquiry regarding Mr. Cycenas as Congressman Duffy's constituent. The July 9, 2013 letter provides that "[y]our constituent is concerned about the remaining debt on his RD housing loan and the possibility that I.D. theft/fraud may have occurred." The July 9, 2013 letter states in part,

> USDA remains as the mortgagee of the property located at 7632 Anderson Street, Siren, Wisconsin. It is RD's understanding that St. Croix Valley Hardwoods obtained a judgment against Mr. Cycenas that resulted in the sale of his home. Mr. Cycenas however remains responsible for the repayment of his RD debt until the loan has paid [sic] in full. RD remains vested as the owner of the property until St. Croix Hardwoods pays RD in full or RD forecloses on the property.
>
> St. Croix Valley Hardwoods filed a judgment lien against Mr. Cycenas and his property in Burnett County. Subsequently the property was sold through a foreclosure/sheriff sale, in which St. Croix Valley Hardwoods was the highest bidder. As a result of the sale, St. Croix Valley Hardwoods became the legal owner of the property, subject to RD's first mortgage estate lien. Currently RD is working with St. Croix Valley Hardwoods for them to obtain a payoff balance to satisfy RD's mortgage lien. To date RD has been unsuccessful in obtaining the required funds from St. Croix Valley Hardwoods.
>
> RD has mailed your office a letter on March 15, 2013, which stated the issue that Mr. Cycenas is disputing is a legal matter between Mr. Cycenas and St. Croix Valley Hardwoods; USDA has no reasonable justification to get involved. In addition RD has found no reasonable reason to identify that any fraud occurred on Mr. Cycenas' RD loan.
>
> Since St. Croix Valley Hardwoods foreclosed on the property as a junior lien holder and subsequently became owner of the property, RD will continue its collection efforts from St. Croix Valley Hardwoods to pay off Mr. Cycenas' loan; however Mr. Cycenas remains liable for the debt until it

is paid in full. If payment is not received from St. Croix Valley Hardwoods, the eventual outcome will be that RD, as first lien holder, ceases [sic] the property and sells it as foreclose sale to pay off the remaining debt.

In its motion to dismiss, defendant asserts a chain of events similar to those reflected in the July 9, 2013 letter quoted above, alleging that, on May 18, 2007, "the Burnett County Sheriff conducted a sheriff sale of the Property." According to defendant, "SCVH was the winning bidder, and so the Property was sold to SCVH for $34,982, subject to a fifteen-month redemption period and RHS's mortgage lien." Defendant contends that, on August 25, 2008, "the Burnett County Sheriff conveyed the Property to SCVH via sheriff's deed, and later recorded the deed on September 19, 2008." According to defendant, "[s]ince 2008, SCVH has owned (and still owns) the Property in fee simple, subject to RHS's mortgage lien." Defendant asserts that plaintiff "holds absolutely no interest in the Property," and that St. Croix and the Rural Housing Service have entered into negotiations "to collect the proceeds necessary to pay off Mr. Cycenas's loan," although defendant urges that "Mr. Cycenas remains liable for the debt until it is paid in full and RHS possesses the right to sell the property at a foreclosure sale."

Although not entirely clear from the complaint whether intended as an assertion or a request, plaintiff states that "[t]his Plaintiff received the payoff immediately," and then cites another exhibit to the complaint, which appears be a March 15, 2013 letter from the Rural Housing Service Payoff/Research Section "in response to your [plaintiff's] request for information regarding the above mentioned Rural Development loan," Loan Number 0001587796. The March 15, 2013 letter explains that the letter "includes a Statement of Loan Balances, instructions on how to receive a payoff statement, and information about subsidy recapture and capital improvements." The March 15, 2013 letter, however, states clearly that "[t]his is not a payoff statement. Instructions on how to receive a payoff statement are on Page 2 of this letter." The record does not otherwise suggest or reflect that plaintiff received a payoff.

Although plaintiff's filings are, at times, confusing and difficult to follow, because Mr. Cycenas has filed this action as a pro se plaintiff, the court attempts to separate and address each of plaintiff's allegations. Plaintiff appears first to claim that "on or before, March 23, 2007, the Defendant's Fick and SCVH, Fraudulently misrepresented to the U.S. Bankruptcy Court a request for Lift of Stay, which was granted by the Court." Plaintiff's second claim appears to assert that "Defendant's RD, Fick, and SCVH, Conspired to use this Plaintiff's name, Social Security Number, Mortgage Account Number 0001587796, Interest Credit Account, and Credit, without any Authorization of any sort from this Plaintiff, to continue to make monthly payments to RD and to profit by rental receipts from said property," citing Ms. Kirby's affidavit. Plaintiff's third claim seems to contend that "the mortgage is still in the Plaintiff's name, and that the Plaintiff is still responsible for said mortgage and that mortgage is in line for foreclosure creating an improper and incomplete bankruptcy." Plaintiff's fourth claim appears to assert that "Defendants, continue in their **Cover Up** by RD stating 'RD is currently working with SCVH for them to obtain a payoff balance to satisfy RD's mortgage lien.'" (emphasis in

original). Plaintiff indicates he "wants to know why it takes **seven years** to get that balance and further proves that co-conspirator Defendants, RD, Fick, and SCVH have and continue to use this Plaintiff's name, Social Security Number, Mortgage Account Number 0001587796, Interest Credit Account, and Credit, without any Authorization of any sort from this Plaintiff." (emphasis in original). Plaintiff also asserts, in what appears to be a fifth claim, that "Identity Theft, Mortgage Fraud, Theft of Social Security Numbers and the un-authorized use of that number, credit theft or fraud, and Breach of Contract by anyone including the United States is against the law" and that "Defendant RD is in BREACH of Contract, becoming a co-conspirator with Fick and SCVH, by not getting written authorization from this Plaintiff." In an asserted sixth claim, plaintiff asks whether, "by Lifting the Stay, did the U.S. Bankruptcy Court alter the Plaintiff's Bankruptcy and the Bankruptcy Court is liable for all damages." Finally, in his alleged seventh claim suggests allegations of trespass and contends he "published and recorded in the Burnett County Register of Deeds a PUBLIC NOTICE with all fees and fines for anyone who trespassed on private property or rights of this Plaintiff, including a $10,000.00 fee/fine per day per person."[3] (capitalization in original).

Based on these allegations, plaintiff seeks relief from this court to (1) immediately stop the defendant' alleged "unauthorized use of this Plaintiff's Identity, Social Security Number, Mortgage Accounts, and Credit," (2) provide that plaintiff "will not be held responsible for USDA-RD Mortgage Account number 0001587796, that would have been dismissed in Plaintiff's bankruptcy," (3) grant judgment in favor of plaintiff for "no less than $6,000,000.00 (Six Million Dollars) for the unauthorized use of this Plaintiff's Identity," and (4) find "a larger settlement is due or if any prosecution should be charged against the Defendants."

As noted above, defendant filed a motion to dismiss plaintiff's complaint pursuant to RCFC 12(b)(1) and RCFC 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Defendant first argues that only the United States is properly named as a defendant in this court and, as such, Mr. Fick and St. Croix are not properly named as co-defendants by plaintiff in the above captioned case. Moreover, defendant argues that this court is without jurisdiction to hear plaintiff's case because the Tucker Act expressly excludes tort and criminal claims, and, thus, excludes plaintiff's claims of conspiracy, fraudulent misrepresentation, fraud, identity theft, un-authorized disclosure of private information, or invasion of privacy. In addition, defendant argues that this court is without jurisdiction to hear plaintiff's claims to review actions of the Bankruptcy Court for any alleged liability and damages resulting from the Bankruptcy Court's grant of St Croix's motion to lift the stay in the bankruptcy proceedings. According to defendant, "[e]ven if the Court possessed jurisdiction to entertain these claims, the Court would lack jurisdiction to grant Mr. Cycenas much of

---

[3] Plaintiff attaches to his complaint a copy of an alleged "PUBLIC NOTICE," (capitalization in original), providing "the liabilities for real and/or constructive trespass/infringement of the private property or interest(s) therein of Edward Joseph Cycenas," which included a printer's affidavit indicating the public notice was printed on four separate occasions during the summer of 2003 in the Inter-County Leader, a weekly newspaper printed and published in Frederic, Wisconsin.

the specific relief he seeks," including the injunctive and declaratory relief that plaintiff requested. Finally, according to defendant, plaintiff's claim for breach of contract should be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim because plaintiff "failed to allege any facts demonstrating the existence of a duty and a breach of that duty on the part of the United States. In particular, Mr. Cycenas has not alleged any obligation or duty arising out of the mortgage, much less one specifically prohibiting the disclosure of the personal information he claims RHS provided to SCVH." Defendant also argues plaintiff fails to "identify any provision of the mortgage contract that fairly can be construed as money-mandating, as necessary for this Court's jurisdiction," where here "the payment obligations of the mortgage loan run from Mr. Cycenas to RHS, not the other way around."

Plaintiff filed a "Response to Defendant's Motion to Dismiss, and Request to Dismiss and Plaintiff's Motion for Default Summary Judgment." Although plaintiff's argument in his response, as in his complaint, are at times difficult to follow, he seems to argue that this court has jurisdiction because defendant's alleged conspiracy or other tortious or criminal actions are themselves a breach of the mortgage contract and all banking regulations. Plaintiff argues:

> The Court has jurisdiction based on the Tucker Act which was established for contractual obligations of the United States, which Breach of Contract is a major part of a contractual obligation that includes those contractual obligations of tort based on conspiracy, alleged criminal conduct and fraud. The USDA-RH as well as SCVH and Fick conspired well before this Plaintiff's Chapter Seven Bankruptcy to use this Plaintiff's name, social security number, mortgage account and credit, without Authorization of this Plaintiff, clearly to the benefit of the defendants, Breaching the Mortgage Contract between this Plaintiff and USDA-RH and all Banking Regulations.

Moreover, plaintiff's response argues that the defendants owed an obligation to the plaintiff to disclose that "the first mortgage was not being fully satisfied and extinguished in June 2007" and "that they were continuing Plaintiff's mortgage such that Plaintiff remained in the right of possession and liable for the USDA mortgage on an ongoing basis."

Plaintiff alleges continued unauthorized use of his identity and mortgage account, citing to section 943.201 of Wisconsin Statute, which covers "[u]nauthorized use of an individual's personal identifying information or documents." Wis. Stat. § 943.201 (2014). Mr. Cycenas asserts that "[o]n August 25, 2014 this Plaintiff received from USDA-RH a notice of insurance again using this Plaintiff's Identity for property this Plaintiff does not even own," and he attaches to his response a letter from USDA-RH to Mr. Cycenas, indicating "[b]ecause we did not have evidence that you had hazard insurance on the property listed above, we bought insurance on your property [7632 Anderson St. Siren, WI 54872, Loan Number 0001587796] and added the cost to your mortgage loan account." Plaintiff appears to argue that defendants have the burden of proving that they

have the authority to use plaintiff's identifying information, including his mortgage contract. Plaintiff contends that:

> On the auspice that the Defendant's [sic] had extinguished the first mortgage such that the Plaintiff ridded himself of an over encumbered property and a judgment debt against himself allowing a "fresh start" in bankruptcy; that the same extinguishment, had the Defendants followed through and not disguised the fact of their failure or refusal, was the basis of the Plaintiff's acquiescence to the benefit of the Defendants: that the Defendants knew they were getting the benefit and expected to extinguish the first mortgage is clear through their disguising of the fact that they did not extinguish it.

Finally, plaintiff also requests "the Court to throw out the Defendants' Motions as non-compliant and for Summary Judgment against the Defendants' Failure to Answer the Complaint" because "[t]he Summons clearly noticed and warned the defendants that an answer complying was required with-in [sic] 60 days and Defendants required an additional 21 days and they chose not to, knowing default judgment was due this Plaintiff if they failed."[4] He further asserts summary judgment is proper because the "Defendants' rights were 'Subject to' the First Mortgage holder," and they "admitted and confessed they did not extinguish the first mortgage." According to plaintiff, the defendant never denied the unauthorized use of the plaintiff's name and identity. In his response, plaintiff, thus, asks this court to order defendant, United States by "Default Summary Judgment . . . to comply with the Pray [sic] of Relief in the Original Complaint for the amount of Six Million Dollars to be paid to this Plaintiff and a Satisfaction of Mortgage to be given to this Plaintiff."

## DISCUSSION

Plaintiff filed his case in this court <u>pro se</u>. Despite that plaintiff's filings are difficult to follow, when determining whether a complaint filed by a <u>pro se</u> plaintiff is sufficient to invoke review by a court, <u>pro se</u> plaintiffs are entitled to liberal construction of their pleadings. <u>See Haines v. Kerner</u>, 404 U.S. 519, 520–21 (requiring that allegations contained in a <u>pro se</u> complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), <u>reh'g denied</u>, 405 U.S. 948 (1972); <u>see also Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Hughes v. Rowe</u>, 449 U.S. 5, 9–10 (1980); <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976), <u>reh'g denied</u>, 429 U.S. 1066 (1977); <u>Matthews v. United States</u>, 750 F.3d 1320, 1322 (Fed. Cir. 2014); <u>Diamond v. United States</u>, 115 Fed. Cl. 516, 524 (2014), <u>aff'd</u>, 2015 WL 527500 (Fed. Cir. Feb. 10, 2015). "However, '"[t]here is no duty on the part of the trial court to create a claim which [the plaintiff] has not spelled out in his [or her] pleading."'" <u>Lengen v. United States</u>, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting <u>Scogin v. United States</u>, 33 Fed. Cl. 285, 293 (1995) (quoting <u>Clark v. Nat'l Travelers Life Ins. Co.</u>, 518 F.2d 1167, 1169 (6th Cir.

---

[4] Upon defendant's request, by court order, with a copy mailed to plaintiff, the court granted defendant 21 days enlargement of time to respond to the plaintiff's original complaint.

1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9 and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.) ("Plaintiff bears the burden of showing jurisdiction by a preponderance of the evidence."), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995)); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

It is well established that "'subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.'" Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011); see also Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." (citing Arbaugh v. Y & H Corp., 546 U.S. at 514)); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) ("[A] court has a duty to inquire into its jurisdiction to hear and decide a case." (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990))); View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not."). "The objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." Arbaugh v. Y & H Corp., 546 U.S. at 506; see also Cent. Pines Land Co., L.L.C. v. United States, 697 F.3d 1360, 1364 n.1 (Fed. Cir. 2012) ("An objection to a court's subject matter jurisdiction can be raised by any party or the court at any stage of litigation, including after trial and the entry of judgment." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506)); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1346 (Fed. Cir. 2008) ("[A]ny party may challenge, or the court may raise sua sponte, subject matter jurisdiction at any time." (citing Arbaugh v. Y & H Corp., 546 U.S. at 506; Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); and Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998))); Pikulin v. United States, 97 Fed. Cl. 71, 76, appeal dismissed, 425 F. App'x 902 (Fed. Cir. 2011). In fact, "[s]ubject matter jurisdiction is an inquiry that this court must raise sua sponte, even where . . . neither party has raised this issue." Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings, 370 F.3d 1354, 1369 (Fed. Cir.) (citing Textile

Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1485 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir.), cert. denied, 525 U.S. 826 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. granted in part sub. nom Lab. Corp. of Am. Holdings v. Metabolite Labs., Inc., 546 U.S. 975 (2005), cert. dismissed as improvidently granted, 548 U.S. 124 (2006).

Pursuant to the RCFC and the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2014); Fed. R. Civ. P. 8(a)(1), (2) (2014); see also Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–57, 570 (2007)). "Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). "Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. Wright and A. Miller, Federal Practice and Procedure § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

When deciding a case based on a lack of subject matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–56 (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Moreover, it is well established that, in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982), recognized by Davis v. Scherer, 468 U.S. 183, 190 (1984); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327–28 (Fed. Cir. 2006); Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Boise Cascade Corp. v.

<u>United States</u>, 296 F.3d 1339, 1343 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2002), <u>cert. denied</u>, 538 U.S. 906 (2003).

The Tucker Act grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (2012). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. <u>See United States v. Navajo Nation</u>, 556 U.S. 287, 289–90 (2009); <u>United States v. Mitchell</u>, 463 U.S. 206, 216 (1983); <u>see also Greenlee Cnty., Ariz. v. United States</u>, 487 F.3d 871, 875 (Fed. Cir.), <u>reh'g and reh'g en banc denied</u> (Fed. Cir. 2007), <u>cert. denied</u>, 552 U.S. 1142 (2008); <u>Palmer v. United States</u>, 168 F.3d 1310, 1314 (Fed. Cir. 1999).

"Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." <u>United States v. Mitchell</u>, 463 U.S. at 216; <u>see also United States v. White Mountain Apache Tribe</u>, 537 U.S. 465, 472 (2003); <u>Smith v. United States</u>, 709 F.3d 1114, 1116 (Fed. Cir.), <u>cert. denied</u>, 134 S. Ct. 259 (2013); <u>RadioShack Corp. v. United States</u>, 566 F.3d 1358, 1360 (Fed. Cir. 2009); <u>Rick's Mushroom Serv., Inc. v. United States</u>, 521 F.3d at 1343 ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."). In <u>Ontario Power Generation, Inc. v. United States</u>, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." <u>Eastport S.S. [Corp. v. United States</u>, 178 Ct. Cl. 599, 605–06,] 372 F.2d [1002,] 1007–08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting <u>Clapp v. United States</u>, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those

claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v.] Testan, 424 U.S. [392,] 401–02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ontario Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (The absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act."); Peoples v. United States, 87 Fed. Cl. 553, 565–66 (2009).

The United States is Only Proper Defendant in this Court

This court lacks jurisdiction to hear plaintiff's allegations against Mr. Fick and St. Croix Valley Hardwoods, Inc., both of which plaintiff named as defendants. The government is correct that when a complaint filed in this court names private parties, this court is without jurisdiction to hear those allegations not against the United States. All claims filed in the United States Court of Federal Claims must be filed against the United States as the defendant. See RCFC 10(a) (2014); see also 28 U.S.C. § 1491(a). The United States Supreme Court has indicated that for suits filed in the United States

Court of Federal Claims and its predecessors, "[i]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." United States v. Sherwood, 312 U.S. 584, 588, (1941) (citation omitted). Stated differently, "the *only* proper defendant for any matter before this court is the United States, not its officers, nor any other individual." Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003) (emphasis in original); see also United States v. Sherwood, 312 U.S. at 588; Anderson v. United States, 117 Fed. Cl. 330, 331 (2014) ("This court does not have jurisdiction over any claims alleged against states, localities, state and local government entities, or state and local government officials and employees; jurisdiction only extends to suits against the United States itself."); Warren v. United States, 106 Fed. Cl. 507, 510–11 (2012) ("It is well settled that the United States is the only proper defendant in the Court of Federal Claims."); Eskridge Research Corp. v. United States, 92 Fed. Cl. 88, 95 (2010) (citing Howard v. United States, 230 F. App'x 975, 976 (Fed. Cir.) ("The United States is the only proper defendant before the Court of Federal Claims."), reh'g denied (Fed. Cir. 2007)); Hufford v. United States, 85 Fed. Cl. 607, 608 (2009) ("[T]his Court does not have subject matter jurisdiction to entertain controversies between private parties."); May v. United States, 80 Fed. Cl. 442, 444 ("Jurisdiction, then, is limited to suits against the United States."), aff'd, 293 F. App'x 775 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2008); Delmarva Power & Light Co. v. United States, 79 Fed. Cl. 205, 213 (2007) ("The Court of Federal Claims and its predecessor courts have never possessed jurisdiction to adjudicate disputes between private parties. . . . The court lacks jurisdiction over private rights implicated in a dispute between private parties."), aff'd, 542 F.3d 889 (Fed. Cir. 2008), cert. denied, 556 U.S. 1219 (2009); Shalhoub v. United States, 75 Fed. Cl. 584, 585 (2007) ("When a plaintiff's complaint names private parties, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations.").

To the extent that any of plaintiff's claims are against Mr. Fick and St. Croix, the court has no jurisdiction to entertain plaintiff's suit as to them. Plaintiff's first claim in his complaint, that "on or before, March 23, 2007, the Defendant's Fick and SCVH, Fraudulently misrepresented to the U.S. Bankruptcy Court a request for Lift of Stay, which was granted by the Court," which only states claims against private parties, Mr. Fick and St. Croix, and, thus, must be dismissed for lack of jurisdiction.

Plaintiff's Claims that Sound in Tort or Allege Criminal Conduct

Plaintiff's second claim in his complaint asserts that "Defendant's RD, Fick, and SCVH, Conspired to use this Plaintiff's name, Social Security Number, Mortgage Account Number 0001587796, Interest Credit Account, and Credit, without any Authorization of any sort from this Plaintiff, to continue to make monthly payments to RD and to profit by rental receipts from said property." Plaintiff's fourth claim in his complaint alleges "Defendants, continue in their **Cover Up** by RD stating 'RD is currently working with SCVH for them to obtain a payoff balance to satisfy RD's mortgage lien.'" (emphasis in original). Plaintiff's fifth claim suggests allegations of "Identify Theft, Mortgage Fraud, Theft of Social Security Numbers and the un-authorized use of that [social security] number, credit theft or fraud." Plaintiff's seventh claim

suggests potential allegations of trespass and contends plaintiff "published and recorded in the Burnett County Register of Deeds a PUBLIC NOTICE with all fees and fines for anyone who trespassed on private property or rights of this Plaintiff, including a $10,000.00 fee/fine per day per person," (capitalization in original), which plaintiff appears to believe should have resulted in those fines being paid to him.

To the extent plaintiff's complaint asserts claims of conspiracy, misrepresentation, identity theft, mortgage fraud, credit theft or fraud, and trespass, those claims sound in tort, or allege criminal conduct. As such, this court lacks jurisdiction to adjudicate those claims. The Tucker Act expressly excludes tort claims, including those committed by federal officials, from the jurisdiction of the United States Court of Federal Claims. See 28 U.S.C. § 1491(a) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d at 1343; Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.) ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961 (1994); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 132 S. Ct. 1105 (2012); Jumah v. United States, 90 Fed. Cl. 603, 607 (2009) ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims. Here, Mr. Jumah seeks damages for '[n]eglect, [m]isrepresentation, [f]alse [i]mprisonment, [c]onspiracy, [i]ntentional [i]nfliction of emotional [d]istress, [i]nvasion of [p]rivacy, [n]egligence and [t]respass and [p]unitive [d]amages.' These are all claims sounding in tort." (internal citation omitted; all brackets in original)), aff'd, 385 F. App'x 987 (Fed. Cir. 2010); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); Fullard v. United States, 77 Fed. Cl. 226, 230 (2007) ("This court lacks jurisdiction over plaintiff's conspiracy claim because the Tucker Act specifically states that the Court of Federal Claims does not have jurisdiction over claims 'sounding in tort.'"); Edelmann v. United States, 76 Fed. Cl. 376, 379–80 (2007) ("This Court 'does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties' . . . [and] Plaintiffs' claims of fraud, misrepresentation, slander, perjury, harassment, intimidation, coercion, theft, and defamation, and their claims that the Government deprived Ms. Edelmann of her right to a fair trial, are tort claims." (quoting Cottrell v. United States, 42 Fed. Cl. 144, 149 (1998)); McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007); Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006). Plaintiff's claims of conspiracy, misrepresentation, fraud, and trespass all sound in tort and, accordingly must be dismissed for lack of jurisdiction.

Moreover, to the extent that plaintiff is alleging criminal conduct by the Rural Housing Service, this court also lacks jurisdiction to adjudicate those claims. <u>See Joshua v. United States</u>, 17 F.3d 378, 379 (Fed. Cir. 1994); <u>see also Cooper v. United States</u>, 104 Fed. Cl. 306, 312 (2012) (holding that "this court does not have jurisdiction over [plaintiff's] claims because the court may review neither criminal matters, nor the decisions of district courts.") (internal citations omitted); <u>Mendes v. United States</u>, 88 Fed. Cl. 759, 762, <u>appeal dismissed</u>, 375 F. App'x 4 (Fed. Cir. 2009); <u>Hufford v. United States</u>, 87 Fed. Cl. 696, 702 (2009) (holding that the United States Court of Federal Claims lacked jurisdiction over claims arising from the violation of a criminal statute); <u>Matthews v. United States</u>, 72 Fed. Cl. 274, 282 (finding that the court lacked jurisdiction to consider plaintiff's criminal claims), <u>recons. denied</u>, 73 Fed. Cl. 524 (2006); <u>McCullough v. United States</u>, 76 Fed. Cl. at 4 (finding that the court lacked jurisdiction to consider plaintiff's criminal claims). In plaintiff's response to defendant's motion to dismiss, plaintiff quotes section 943.201 of Chapter 943 of Wisconsin Statute, which covers "Crimes Against Property," specifically "Unauthorized use of an individual's personal identifying information or documents," to seemingly support his claims regarding unauthorized use of his identity and documents. <u>See</u> Wis. Stat. § 943.201. Plaintiff's criminal allegations of identity theft, mortgage fraud, theft or unauthorized use of his social security number, or credit theft or fraud, and, thus, also his request for judgment against defendants for "no less than $6,000,000.00 (Six Million Dollars) for the unauthorized use of this Plaintiff's identify," must be dismissed pursuant to RCFC 12(b)(1) as outside the court's jurisdiction. In sum, the court lacks jurisdiction to review plaintiff's second, fourth, fifth, and seventh claims that sound in tort or allege criminal conduct.

<u>Plaintiff's Claims Against Actions by the Bankruptcy Court</u>

To the extent that plaintiff is asking this court to review the decisions or actions of the United States Bankruptcy Court of the Western District of Wisconsin, this court does not have jurisdiction to do so. Plaintiff writes in his complaint that "by Lifting the Stay, did the U.S. Bankruptcy Court alter the Plaintiff's Bankruptcy and the Bankruptcy Court is liable for all damages." Plaintiff further contends that "the mortgage is still in the Plaintiff's name, and that the Plaintiff is still responsible for said mortgage and that mortgage is in line for foreclosure creating an improper and incomplete bankruptcy." "[T]he Court of Federal Claims does not have jurisdiction to review decisions of federal bankruptcy courts." <u>Allustiarte v. United States</u>, 256 F.3d 1349, 1350 (Fed. Cir.), <u>cert. denied</u>, 534 U.S. 1042 (2001); <u>see also Joshua v. United States</u>, 17 F.3d at 380 (finding that the United States Court of Federal Claims does not have jurisdiction to review the decisions of federal district courts); <u>Mora v. United States</u>, 118 Fed. Cl. 713, 716 (2014) ("[T]his court does not have jurisdiction to review the decisions of state courts, federal bankruptcy courts, federal district courts, or federal circuit courts of appeals."). Therefore, this court lacks jurisdiction to review plaintiff's third and sixth claims.

Plaintiff's Breach of Contract Claims

To the extent that plaintiff alleges a breach of contract, plaintiff fails to state a claim upon which relief can be granted. Plaintiff asserts in his complaint that "Identity Theft, Mortgage Fraud, Theft of Social Security Numbers and the un-authorized use of that number, credit theft or fraud, and Breach of Contract by anyone including the United States is against the law" and that "Defendant RD is in BREACH of Contract, becoming a co-conspirator with Fick and SCVH, by not getting written authorization from this Plaintiff." (capitalization in original).

In examining what must be pled in order to state a claim, under both RCFC 8(a)(2) and Rule (8)(a)(2) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2); Fed. R. Civ. P. 8(a)(2); see also Bell Atl. Corp. v. Twombly, 550 U.S. at 555. The United States Supreme Court stated: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. at 555 (citations omitted, brackets in original); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555–57, 570); A&D Auto Sales, Inc. v. United States, 748 F.3d 1142, 1157 (Fed. Cir. 2014); Bell/Heery v. United States, 739 F.3d 1324, 1330 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2014); Kam-Almaz v. United States, 682 F.3d 1364, 1367 (Fed. Cir. 2012) ("The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)); Totes-Isotoner Corp. v. United States, 594 F.3d 1346, 1354–55 (Fed. Cir.), cert. denied, 131 S. Ct. 92 (2010); Bank of Guam v. United States, 578 F.3d 1318, 1326 (Fed. Cir.) ("In order to avoid dismissal for failure to state a claim, the complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557)), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010).

To have privity of contract with the United States government, and, therefore, invoke the jurisdiction of the United States Court of Federal Claims for a breach of contract claim, plaintiff "must show that either an express or implied-in-fact contract underlies [the] claim." Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997). "For there to be an express contract, the parties must have intended to be bound and must have expressed their intention in a manner capable of understanding. A definite offer and an unconditional acceptance must be established." Russell Corp. v. United States, 210 Ct. Cl. 596, 606, 537 F.2d 474, 481 (1976), cert. denied, 429 U.S. 1073 (1977). Implied-in-fact contracts are agreements ""founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding."" Trauma Serv. Grp. v. United States, 104 F.3d at 1325 (quoting Hercules, Inc. v. United States, 516 U.S. 417, 424 (1996) (quoting Balt. & Ohio R.R. Co.

16

v. United States, 261 U.S. 592, 597 (1923))); see also Kam-Almaz v. United States, 682 F.3d at 1368; Bank of Guam v. United States, 578 F.3d at 1329 (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1326); Bay View, Inc. v. United States, 278 F.3d 1259, 1265–66 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 285 F.3d 1035 (Fed. Cir.), cert. denied, 537 U.S. 826 (2002); Westlands Water Dist. v. United States, 109 Fed. Cl. 177, 203 (2013); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 728 (2010) (citing Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 597), appeal dismissed, 454 F. App'x 900 (Fed. Cir. 2011); Russell Corp. v. United States, 210 Ct. Cl. at 609, 537 F.2d at 482. Such an agreement will not be implied "unless the meeting of minds was indicated by some intelligible conduct, act or sign." Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 598; see also Russell Corp. v. United States, 210 Ct. Cl. at 609, 537 F.2d at 48.

It is well settled that "[t]o recover for breach of contract, a party must allege and establish: (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by the breach." San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989); see also Barlow & Haun, Inc. v. United States, 118 Fed. Cl. 597, 620 (2014). A breach of contract claim requires: "(1) an obligation or duty arising out of the contract and (2) factual allegations sufficient to support the conclusion that there has been a breach of the identified contractual duty." Bell/Heery v. United States, 739 F.3d at 1330 (citing Hercules, Inc. v. United States, 24 F.3d 188, 198 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1994), aff'd, 516 U.S. 1049 (1996); San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d at 959).

From plaintiff's filings, most particularly his response to defendant's motion to dismiss, it appears plaintiff is alleging breach of the mortgage document he entered into with the Rural Housing Service. It appears plaintiff is arguing that defendant's alleged conspiracy and other tortious conduct are in themselves breaches of contractual obligations based on the mortgage. Plaintiff argues:

> The Court has jurisdiction based on the Tucker Act which was established for contractual obligations of the United States, which Breach of Contract is a major part of a contractual obligation that includes those contractual obligations of tort based on conspiracy, alleged criminal conduct and fraud. The USDA-RH as well as SCVH and Fick conspired well before this Plaintiff's Chapter Seven Bankruptcy to use this Plaintiff's name, social security number, mortgage account and credit, without Authorization of this Plaintiff, clearly to the benefit of the defendants, Breaching the Mortgage Contract between this Plaintiff and USDA-RH and all Banking Regulations.

Therefore, it seems plaintiff argues that the Rural Housing Service breached Mr. Cycenas' mortgage contract by continuing to enforce the Rural Housing Service mortgage lien following Mr. Cycenas' Chapter 7 bankruptcy. In addition, plaintiff argues that the defendant owed an obligation to the plaintiff to disclose that "the first mortgage

was not being fully satisfied and extinguished in June 2007" and "that they were continuing Plaintiff's mortgage such that Plaintiff remained in the right of possession and liable for the USDA mortgage on an ongoing basis."

In defendant's motion to dismiss, defendant states that "[i]n 1983, Mr. Cycenas applied to RHS (then known as the Farmers Home Administration) for a residential home loan (the Property)" and "[o]n November 8, 1983, Mr. Cycenas executed a $44,000 promissory note in favor of RHS, used the proceeds to buy the Property and construct a home, and granted RHS a first mortgage lien on the Property." Defendant argues, however, that plaintiff's breach of contract claim should be dismissed because plaintiff "failed to allege any facts demonstrating the existence of a duty and a breach of that duty" by the Rural Housing Service. Specifically, defendant argues that "Mr. Cycenas has not alleged any obligation or duty arising out of the mortgage, much less one specifically prohibiting the disclosure of the personal information he claims RHS provided to SCVH." Plaintiff's breach of contract allegations cannot withstand defendant's motion to dismiss. This court agrees with defendant that plaintiff fails to sufficiently allege a specific obligation or duty on the part of the government which arises out of the mortgage contract.[5]

<u>Plaintiff's Requests for Injunctive or Declaratory Relief</u>

In addition to requesting judgment against Defendant for "no less than $6,000,000.00 (Six Million Dollars) for the unauthorized use of this Plaintiff's Identity," plaintiff also requests injunctive relief that "the unauthorized use of this Plaintiff's Identity, Social Security Number, Mortgage Accounts, and Credit, by the Defendants, immediately stops" and declaratory relief that "this Plaintiff will not be held responsible for USDA-RD Mortgage Account number 0001587796, that would have been dismissed in Plaintiff's bankruptcy." The court lacks jurisdiction to grant injunctive or declaratory

---

[5] Defendant also argues that plaintiff fails to "identify any provision of the mortgage contract that fairly can be construed as money-mandating, as necessary for this court's jurisdiction" in this case, which defendant describes as "the payment obligations of the mortgage loan run from Mr. Cycenas to RHS, not the other way around." Defendant states that the "existence of [a] contract does not always mean that Tucker Act jurisdiction exists." As the United States Court of Appeals for the Federal Circuit stated in <u>Holmes v. United States</u>, 657 F.3d 1303 (Fed. Cir. 2001):

> That is not to say, however, that the existence of a contract always means that Tucker Act jurisdiction exists. A contract expressly disavowing money damages would not give rise to Tucker Act jurisdiction, and we have found Tucker Act jurisdiction lacking in the case of an agreement "entirely concerned with the conduct of the parties in a criminal case."

<u>Id.</u> at 1314 (quoting <u>Sanders v. United States</u>, 252 F.3d 1329, 1334 (Fed. Cir. 2001) and citing <u>Kania v. United States</u>, 650 F.2d 264, 268–69, 227 Ct. Cl. 458, 465-66, <u>cert. denied</u> 454 U.S. 895 (1981)). There is no documented evidence in the record that the government breached any responsibilities, contract or otherwise, to this plaintiff.

relief in the above captioned case as requested by the plaintiff. The United States Supreme Court, in <u>United States v. King</u>, 395 U.S. 1 (1969), concluded in reference to a predecessor court to this court, "[i]n the absence of an express grant of jurisdiction from Congress, we decline to assume that the Court of Claims has been given the authority to issue declaratory judgments." <u>Id.</u> at 5. In reference to this court, the United States Court of Appeals for the Federal Circuit, in <u>Brown v. United States</u>, similarly concluded that an appellant's demand for declaratory or injunctive relief regarding alleged tortious acts by the government was "outside the jurisdiction of the Court of Federal Claims. The Tucker Act does not provide independent jurisdiction over such claims for equitable relief." <u>Brown v. United States</u>, 105 F.3d at 624. The United States Court of Appeals for the Federal Circuit also stated, as follows:

> The Court of Federal Claims has never been granted general authority to issue declaratory judgments, and to hold that the Court of Federal Claims may issue a declaratory judgment in this case, unrelated to any money claim pending before it, would effectively override Congress's decision not to make the Declaratory Judgment Act applicable to the Court of Federal Claims.

<u>Nat'l Air Traffic Controllers Ass'n v. United States</u>, 160 F.3d 714, 716–17 (Fed. Cir. 1998); <u>see also</u> <u>United States v. Tohono O'Odham Nation</u>, 131 S. Ct. 1723, 1729 (2011) (The United States Court of Federal Claims "has no general power to provide equitable relief against the Government or its officers."); <u>Massie v. United States</u>, 226 F.3d 1318, 1321 (Fed. Cir. 2000) ("Except in strictly limited circumstances, see 28 U.S.C. § 1491(b)(2), there is no provision in the Tucker Act authorizing the Court of Federal Claims to order equitable relief." (citing <u>United States v. King</u>, 395 U.S. at 4 ("cases seeking relief other than money damages from the court of claims have never been 'within its jurisdiction'") and <u>Placeway Constr. Corp. v. United States</u>, 920 F.2d 903, 906 (Fed. Cir. 1990))); <u>James v. Caldera</u>, 159 F.3d 573, 580 (Fed. Cir. 1998), <u>reh'g denied</u> (Fed. Cir. 1999) ("[T]he Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" (quoting <u>Austin v. United States</u>, 206 Ct. Cl. 719, 723, <u>cert.</u> <u>denied</u>, 423 U.S. 911 (1975)); <u>Westlands Water Dist. v. United States</u>, 109 Fed. Cl. at 192; <u>Halim v. United States</u>, 106 Fed. Cl. 677, 684–85 (2012); <u>Smalls v. United States</u>, 87 Fed. Cl. 300, 307 (2009); <u>Voisin v. United States</u>, 80 Fed. Cl. 164, 178 (2008) ("It is well-established that the Court of Federal Claims generally does not have the authority to entertain declaratory judgment requests.").

In the above captioned case, Mr. Cycenas has not identified a jurisdictional basis for this court to entertain the declaratory or injunctive relief requested by plaintiff. Plaintiff's requested injunctive and declaratory relief do not meet the specific criteria under 28 U.S.C. § 1491(a)(2) or 28 U.S.C. § 1491(b)(2), permitting equitable relief. Section 1491(a)(2) provides:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such

judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

28 U.S.C. § 1491(a)(2). Section 1491(b)(2) provides, with regards to bid protests that "[t]o afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs." 28 U.S.C. § 1491(b)(2). "Apart from ordering relief under 28 U.S.C. §§ 1491(a)(2) or (b)(2), the Court of Federal Claims has no power to grant a declaratory judgment. . . . The Court of Federal Claims cannot adjudicate a complaint that seeks only declaratory relief." Pryor v. United States, 85 Fed. Cl. 97, 103 (2008) (citing Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d at 717). Plaintiff is not entitled to injunctive relief collateral to a judgment, as plaintiff has failed to demonstrate jurisdiction is proper in this court, and plaintiff's complaint was not a bid protest. As such, the court cannot grant the injunctive or declaratory relief that plaintiff requests.

Plaintiff's Request for Default Judgment

Moreover, as defendant correctly stated in its reply, plaintiff is not entitled to default judgment against the United States on the alleged grounds that the government failed to file an answer within 60 days of receiving plaintiff's complaint. As the defendant noted, the government, pursuant to RCFC 12, properly filed its motion to dismiss the plaintiff's complaint in lieu of filing an answer (i.e., a responsive pleading),[6] after the court had granted defendant's requested 21-day extension with notice to the plaintiff.

---

[6] RCFC 12(b) provides, in part:

> **(b) How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> **(1)** lack of subject-matter jurisdiction;
>
> . . .
>
> **(6)** failure to state a claim upon which relief can be granted;
>
> . . .
>
> A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed.

RCFC 12(b) (emphasis in original). In addition, RCFC 12(a)(4) provides that the defendant is not required to file its answer until the court rules on its motion to dismiss. See RCFC 12(a)(4).

<u>Plaintiff's Motion for Transfer</u>

The transfer statute, 28 U.S.C. § 1631 (2012), requires that particular conditions be met for a case to be transferred to another court:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (2012). Section 610 defines the word "courts" to include "the courts of appeals and district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, the District Court of the Virgin Islands, the United States Court of Federal Claims, and the Court of International Trade." 28 U.S.C. § 610 (2012). Accordingly, to satisfy the statutory requirements to transfer a case: 1) the transferor court must lack jurisdiction; 2) the transfer must be in the interest of justice; and 3) the transferee court must be one in which the action could have been brought at the time the claim was filed. <u>See, e.g.</u>, <u>Rodriguez v. United States</u>, 862 F.2d 1558, 1559–60 (Fed. Cir. 1988); <u>Mora v. United States</u>, 118 Fed. Cl. at 716–17; <u>Albino v. United States</u>, 104 Fed. Cl. 801, 817–18 (2012); <u>Cooper v. United States</u>, 104 Fed. Cl. at 314–15; <u>McGrath v. United States</u>, 85 Fed. Cl. 769, 773 (2009). "A decision to transfer ultimately rests within the sound discretion of the transferor court, and the court may decline to transfer the case '[i]f such transfer "would nevertheless be futile given the weakness of plaintiff's case on the merits."'" <u>Albino v. United States</u>, 104 Fed. Cl. at 817–18 (quoting <u>Faulkner v. United States</u>, 43 Fed. Cl. 54, 56 (1999) (quoting <u>Siegal v. United States</u>, 38 Fed. Cl. 386, 390 (1997))). The United States Court of Appeals for the Federal Circuit has held that "[t]he phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits." <u>Galloway Farms, Inc. v. United States</u>, 834 F.2d 998, 1000–01 (Fed. Cir. 1987) (quoting 28 U.S.C. § 1631 and citing <u>Zinger Constr. Co. v. United States</u>, 753 F.2d 1053, 1055 (Fed. Cir. 1985)).

In the above captioned case, this court is dismissing plaintiff's case for lack of jurisdiction because plaintiff's claims are against private parties Mr. Fick and St. Croix; they sound in tort or allege criminal conduct; or they appear to challenge the actions or rulings of the United States Bankruptcy Court of the Western District of Wisconsin. Moreover, plaintiff's claims for breach of contract are being dismissed for failure to state a claim. This court, therefore, finds that transfer to the United States District Court for the Western District of Wisconsin is not in the "interest of justice," given the nature of plaintiff's allegations as included in his complaint and amplified in the other filings he submitted to this court. Plaintiff is a frequent litigator of cases brought in federal courts,

which have been dismissed for lack of subject matter jurisdiction or for failure to state a claim, with multiple courts having simultaneously noted the frivolous or vexatious nature of plaintiff's claims.[7] Moreover, it appears that plaintiff's claims arise from a fundamental misunderstanding of the effects of his Chapter 7 bankruptcy proceeding. Thus, the court declines to transfer plaintiff's claims.

## CONCLUSION

Defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim is, hereby, **GRANTED**, and plaintiff's complaint is **DISMISSED**, with prejudice. The Clerk of the Court shall enter **JUDGMENT** consistent with this Order.

**IT IS SO ORDERED.**

**MARIAN BLANK HORN**
**Judge**

---

[7] In addition to the above-captioned case, the plaintiff appears to have brought at least five other cases in various federal courts, including one other case in this court, that have all been subsequently dismissed. See Cycenas v. United States, No. 11-272C (Fed. Cl. Mar. 8, 2012) (dismissing plaintiff's case for lack of jurisdiction), aff'd, 492 F. App'x 110 (Fed. Cir. 2012); Cycenas v. Kutz, No. 10-471, 2010 WL 4219926 (W.D. Wis. Oct. 20, 2010) (dismissing plaintiff's case for lack of subject matter jurisdiction in part because the plaintiff's claim was "legally frivolous"); Cycenas v. Flanigan, No. 10-253, 2010 WL 3943961, at *1, *3 (W.D. Wis. Oct. 7, 2010) (dismissing plaintiff's case for failure to state a claim upon which relief may be granted, noting that "[l]ike his complaint, plaintiff's briefs contain much unnecessary legalese and irrelevant argument, along with childish and inflammatory language" and "[a]ll of plaintiff's claims are contingent on his belief that defendant Flanigan did not have authority to order an inspection of plaintiff's property," such that "plaintiff names defendants that he believes should have fired Flanigan" or who simply "are married to other defendants"); Cycenas v. U.S. Bank, N.A., No. 05-2268, 2006 WL 145218, at *5 (D. Minn. Jan. 18, 2006) (dismissing plaintiff's case for lack of subject matter jurisdiction, and granting defendant's motion for Rule 11 sanctions against Mr. Cycenas barring him "from filing any lawsuits in this or any other court located in the state of Minnesota, against any named Defendant in this action" or regarding the property at issue in that case, in order "to deter him from commencing vexatious litigation"); Cycenas v. Stoner, No. 03-63, (W.D. Wis. Feb. 6, 2003) (dismissing case for lack of subject matter jurisdiction), aff'd, 88 F. App'x 954 (7th Cir. 2004).